

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00077-CR

Gary **VISE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CR-9391
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  February 11, 2015

AFFIRMED

A jury found appellant Gary Vise guilty of the offense of assault–family violence by strangulation.  Based on the jury's recommendation, the trial court sentenced Vise to three years' confinement, but probated the sentence and placed Vise on community supervision for three years. On appeal, Vise contends: (1) the evidence is insufficient to support his conviction; (2) the trial court erred by instructing the jury on the doctrine of provocation because the evidence is insufficient to support it; and (3) he is entitled to a new trial because portions of the reporter's record are missing.  We affirm.

**BACKGROUND**

Vise was indicted for assault–family violence by choking or strangulation on November 14, 2012. At trial, Officer Hale Poloa testified he responded to a family disturbance call that led him to the home of Vise and Donna Cherry. Officer Poloa stated that when he arrived, Vise was standing in the front yard. The officer placed Vise in handcuffs to detain him. Shortly thereafter, Sergeant Gilberto Martinez arrived. At trial, Sergeant Martinez testified he spoke to Cherry and observed redness on her neck as if someone grabbed it and held it long enough to leave a skin burn. He testified that after he observed Cherry's injuries, an EMT technician, Colin Culp, from the Converse Fire Department examined Cherry. According to Culp, Cherry's throat did not sustain any permanent injury, but there were red marks on her neck. Culp testified he advised Cherry to seek medical attention if she continued to have breathing problems.

Cherry testified she and Vise were living together as boyfriend and girlfriend. One evening, after doing yard work all day, they, along with her son, sat down together for dinner. Cherry testified Vise seemed moody and snapped at her son after he spilled milk during dinner. Cherry testified that after dinner, she cleared the table and took her son to the spare room to watch movies. Cherry stated she and Vise began drinking alcohol, but she stopped after sensing tension from Vise. She testified she repeatedly asked him what was wrong, but her questions seemed to make him more agitated. At that point, Cherry checked on her son and told him to turn up the volume and not to open the door for anyone except her or the police.

According to Cherry, when she returned from checking on her son, Vise was outside the house. She went outside and asked him why he was upset. Cherry testified their discussion became heated and she felt threatened by Vise. She stated she told Vise to stop threatening her and then "popped" a glass bottle at him. The bottle broke against his chest, and Vise reacted by throwing his beer bottle on the ground, lifting Cherry up by her arms, and throwing her to the

ground. Cherry stated that once she was on the ground, Vise "straddled" her and placed his hands around her throat. Cherry testified Vise applied pressure to her neck and made it "a little bit" difficult to breathe. Unable to move, she screamed but was unable to achieve full volume because Vise's hands were around her throat. At that moment, a neighbor's back light came on, and Vise released Cherry. Cherry testified he left the house and she called a friend and 911.

At the close of trial, defense counsel requested an instruction on self-defense, and the State requested an instruction on provocation. The trial court granted both requests. Ultimately, a jury found Vise guilty of the felony offense of assault–family violence by strangulation. Vise was sentenced to three years' confinement, probated. Thereafter, Vise perfected this appeal.

**ANALYSIS**

As noted above, Vise raises three complaints on appeal. First, he contends the evidence is insufficient to support his conviction. He also asserts the trial court erred when it instructed the jury on the doctrine of provocation because according to Vise, the evidence is insufficient to support a provocation instruction. Finally, Vise claims he is entitled to a new trial because portions of the reporter's record are missing.

*Legal Sufficiency*

In his first issue, Vise claims the evidence is insufficient to prove he committed the offense of assault–family violence by strangulation. Specifically, Vise argues Cherry's testimony regarding her ability to breathe, combined with her admission that she could scream for help, rendered the evidence insufficient to prove her normal breathing or blood circulation was impeded during their confrontation.

*Standard of Review*

In reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, we use the standard set out by the Supreme Court in *Jackson v. Virginia*. *Brooks v. State*, 323

S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd). Under this standard, we examine all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Orellana v. State*, 381 S.W.3d 645, 652–53 (Tex. App.—San Antonio 2012, pet. ref'd) (quoting *Mayberry*, 351 S.W.3d at 509). Under this standard, the jury maintains full responsibility of resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Orellana*, 381 S.W.3d at 653 (quoting *Jackson*, 443 U.S. at 319).

Accordingly, we must defer to the jury's weighing of the evidence, resolution of conflicts in the testimony, and assessment of credibility. *Brooks*, 323 S.W.3d at 899; *Orellana*, 381 S.W.3d at 653 (citing *Jackson*, 443 U.S. at 319). We must resolve any inconsistencies in favor of the verdict. *Gonzales v. State*, 330 S.W.3d 691, 694 (Tex. App.—San Antonio 2010, no pet.) (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)). We must also remain mindful that we cannot reweigh the evidence or substitute our judgment for that of the jury. *Orellana*, 381 S.W.3d at 653 (citing *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)). The jury is the exclusive judge of the credibility of witnesses and the weight to be given to their testimony, and the jury may accept or reject all or any portion of a witness's testimony. *Orellana*, 381 S.W.3d at 653 (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)).

*Application*

As noted, the jury convicted Vise of the felony offense of assault–family violence by strangulation. To obtain a conviction for this offense, the State must prove beyond a reasonable doubt that the accused "intentionally, knowingly, or recklessly caused bodily injury . . . by intentionally, knowingly, or recklessly *impeding* the normal breathing or circulation of the blood

of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West 2011) (emphasis added). The verb "impede" is not defined in the Penal Code, and therefore, we must determine its plain meaning under the statute. *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) ("When analyzing the sufficiency of the evidence, undefined statutory terms 'are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance.'"); *see Shipp v. State*, 331 S.W.3d 433, 441 (Tex. Crim. App. 2011). When determining the meaning of an undefined term in a statute, we may consult standard dictionaries. *Clinton*, 354 S.W.3d at 800.

The verb impede suggests performing an act that interferes with or hinders something. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 623 (11th ed. 2003). When used in this context, the verb impede suggests applying pressure to a person's throat or neck or blocking a person's nose or mouth to such an extent it interferes or hinders his or her ability to breathe or circulate blood normally. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B). Now, we must look to the evidence to see whether any rational jury could have found Vise applied pressure to Cherry's throat such that he interfered with or hindered her ability to breathe normally. *See Orellana*, 381 S.W.3d at 652–53.

According to Vise, the evidence is insufficient to prove he impeded Cherry's ability to breathe normally because she testified she had little difficulty breathing and could scream loud enough to call for help. Vise's argument, however, implies Cherry's breathing had to be completely cut off for it to be "impeded" under the statute. We disagree based on the plain meaning of the term. The statute does not require a victim to be completely unable to breathe. Rather, a victim's breath or blood circulation need only be hindered or interfered with. Here, Cherry testified both of Vise's hands were applying pressure around her neck, and it was "a little bit"

difficult for her to breathe and she could not scream fully because "his hands were impeding that process." On cross examination, Cherry added that Vise wrapped his hands around her neck long enough to hurt her. Accordingly, we hold Cherry's testimony is some evidence that the pressure applied by Vise to her throat interfered with or hindered her normal breathing.

In addition to Cherry's testimony, the jury heard testimony from Culp, the EMT technician, who testified Cherry exhibited redness around her throat. Moreover, Sergeant Martinez testified the front of Cherry's neck was red and you could tell someone grabbed her and held her neck long enough to leave a skin burn. Accordingly, we hold a rational jury could reasonably infer Vise applied enough pressure to make it difficult for Cherry to breathe normally. When viewed in the light most favorable to the verdict, we hold the cumulative force of all the evidence is sufficient to support the conviction.

### Jury Charge

In his next issue on appeal, Vise contends the trial court reversibly erred by instructing the jury on the doctrine of provocation. According to Vise, the evidence is insufficient to support the instruction because there was no evidence Vise did any act or used any words that provoked an attack by Cherry.

### Standard of Review

We follow a two-step process when analyzing jury charge issues on appeal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Cornett v. State*, 405 S.W.3d 752, 757 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd.). First, we must determine whether error exists, and second, if we determine error exists, then we must determine whether the error caused sufficient harm to warrant a reversal. *Ngo*, 175 S.W.3d at 743; *Cornett*, 405 S.W.3d at 757. The amount of harm necessary to warrant a reversal depends on whether the appellant objected to the jury charge. *Ngo*, 175 S.W.3d at 743 ("Preservation of charge error does not become an issue until we assess harm.").

Under the well-recognized *Almanza* standard, if the appellant objected to the complained of portion of the jury charge, then he need only show he suffered some harm as a result of the error to obtain a reversal. *Ngo*, 175 S.W.3d at 743 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). On the other hand, if the appellant failed to object to the complained of portion of the charge, then he must show he suffered egregious harm to be entitled to a reversal. *Id.* Accordingly, we will first address whether any error in the charge existed.

*Application*

A jury instruction on the doctrine of provocation restricts a defendant's right to claim self-defense.[1] *Smith v. State*, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998); *Kennedy v. State*, 193 S.W.3d 645, 654 (Tex. App.—Fort Worth 2006, pet. ref'd.). The instruction is required when: (1) the evidence is sufficient to show the defendant performed some act or said some words that provoked the attack on him, (2) the act or words were reasonably calculated to provoke the attack, and (3) the act was performed or the words were said for the purpose and with the intent that the defendant would have a pretext for inflicting harm on the other person. *Smith*, 965 S.W.2d at 513; *Harrod v. State*, 203 S.W.3d 622, 628 (Tex. App.—Dallas 2006, no pet.). Each of these required elements are questions of fact and may be proved by circumstantial evidence. *Smith*, 965 S.W.2d at 513; *Harrod*, 203 S.W.3d at 628; *Fink v. State*, 97 S.W.3d 739, 742 (Tex. App.—Austin 2003, pet. ref'd.). Under this analysis, we must determine whether, viewing the evidence in the light most favorable to giving the instruction, there was sufficient evidence from which a rational jury could have found each element of provocation beyond a reasonable doubt. *Smith*, 965 S.W.2d at 514; *Harrod*, 203 S.W.3d at 628; *Fink*, 97 S.W.3d at 742.

---

[1] However, in this case, the trial court made a Solomon-like decision, giving the jury both a provocation and a self-defense instruction.

Here, Cherry testified Vise was irritable throughout dinner and appeared to become more upset after she asked him what was wrong. She testified that when she went outside to talk to Vise, he said something about her or her son that she could not remember, but it made her feel threatened. Cherry testified he also told her if she hit him like a man, then he would hit her back like one. Cherry stated that at that point, she "popped" a bottle at him. Based on this evidence, we hold the first element of the provocation doctrine is met. The evidence establishes Cherry felt threatened by Vise's irritability and Vise used words that Cherry found threatening and ultimately caused her to attack him. Cherry's testimony permits a jury to infer beyond a reasonable doubt that Cherry threw a bottle at Vise after he goaded her with words.

With regard to the second element of the provocation doctrine, Vise's words were leveled directly at Cherry and her son, and we hold a rational jury could find that such words were reasonably calculated to provoke Cherry. *See Smith*, 965 S.W.2d at 514 (highlighting acts or words directed at victim or third party can be found to provoke difficulty). Although Vise highlights the fact that Cherry did not remember everything that was said verbatim, the evidence is not required to establish exactly what words or act caused the provocation. Rather, the jury must merely be able to find that some provoking words or act exist. *Id.* at 515.

Finally, a rational jury could find that Vise's threat to hit Cherry like a man if she hit him first was said as a pretext to allow Vise to harm Cherry, thereby establishing intent. *Id.* at 513. Intent is a question of fact that can be determined from circumstantial evidence, and the jury could have found beyond a reasonable double that Vise's words were purposely used to provoke an attack by Cherry, giving him an excuse to attack her. *See id.* at 517.

Based on the foregoing evidence, we hold the evidence is sufficient to show Vise provoked the attack by Cherry, his acts or words were reasonably calculated to provoke the attack, and he

did what he did and said what he said with the intent that she attack him so he would have a pretext for inflicting harm on her. *Id.* at 513.

Because sufficient evidence exists on each element of provocation, we hold the trial court did not err by giving the provocation instruction. Accordingly, we need not conduct a harm analysis. We overrule this issue.

### *Reporter's Record Missing*

Finally, Vise asserts he is entitled to a new trial because a portion of the reporter's record is missing. Vise argues the missing portion of the record is significant and necessary to his appeal because that part of the record may contain an objection to the jury charge. Vise points out that whether an objection to the jury charge on provocation was made is important to this appeal because it determines what type of harm analysis must be applied.

### *Standard of Review*

Under Rule 34.6(f) of the Texas Rules of Appellate Procedure, an appellant is entitled to a new trial if: (1) he timely requested a reporter's record; (2) a significant exhibit or portion of the court reporter's notes and records have been lost or destroyed through no fault of his own; (3) the missing portion of the reporter's record or exhibit is necessary to the resolution of the appeal; and (4) the missing portion of the reporter's record or exhibit cannot be replaced by agreement of the parties. TEX. R. APP. P. 34.6(f); *Routier v. State*, 112 S.W.3d 554, 570 (Tex. Crim. App. 2003). To determine whether the rule's requirements are met, we must view the circumstances from the appellant's point of view and resolve any reasonable doubt in favor of the appellant. *Routier*, 112 S.W.3d at 570.

### *Application*

Here, the record reflects the trial court excused the jury for lunch and then heard arguments regarding the self-defense charge, which were transcribed. The court then adjourned for lunch,

and when it reconvened, the trial court stated the evidence raised both a provocation and self-defense issue. The trial court advised the parties they could argue if they wished, but it had reviewed the law and made a decision. The trial court then asked if there was anything else the parties wanted to raise before the jury was seated. When the trial court confirmed no other issues regarding the charge were going to be raised, the court reporter interjected, stating, "Judge, just, their arguments for the charge were on the record and I didn't get –." The trial judge then stated, "What I'm saying is I'm granting the request for the self-defense charge and I'm granting the State's request for the provoking the difficulty charge. And is there anything else we need to take up before I seat the jury?" Neither side objected.

After reviewing the record, we hold that if any part of the reporter's record is lost or destroyed, it was not without the fault of Vise's counsel. Here, the record reflects the arguments regarding the self-defense charge were transcribed, but the arguments regarding the doctrine of provocation were not. When the court reporter informed the trial court and the parties that she was unable to transcribe all of the arguments, the trial court gave both parties an opportunity to put any missing argument on the record. Instead of restating the argument or repeating an objection, Vise's counsel did not put the complained of missing information on the record. In fact, Vise was given several opportunities to confirm any objection made to the jury charge was on the record; first, when the court reporter told the trial judge she missed some information before the proceedings continued, and again, when the trial judge asked for any objections before the charge was submitted to the jury. Accordingly, Vise failed to show how the reporter's record was lost through no fault of his own.

Furthermore, the missing portion of the reporter's record is not necessary to the resolution of the appeal because whether an objection to the provocation charge was made is irrelevant. Vise argues the missing portion of the record could have contained an objection to the jury charge and

whether an objection was made is significant because it determines what type of harm analysis to apply when determining whether the trial court correctly instructed the jury. However, as stated above, we need not conduct a harm analysis because the trial court did not err when instructing the jury on the doctrine of provocation. Therefore, determining what type of harm analysis to apply is irrelevant. Accordingly, we overrule Vise's last issue on appeal.

CONCLUSION

Based on the foregoing, we overrule Vise's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish